**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1088
_____

ANDREW DUONG,
                                        Appellant

v.

BENIHANA NATIONAL CORPORATION;
JOHN DOE(S)

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 1-18-cv-15590)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2022

Before:   AMBRO, JORDAN, and SCIRICA, *Circuit Judges*

(Filed: April 15, 2022)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Andrew Duong, a former chef at the teppanyaki restaurant chain known as Benihana, was terminated after he and another employee got into a fight at work. He sued Benihana for wrongful termination, claiming that the true reason he was fired was the series of complaints he had been making about uncleanliness and sexual harassment in the workplace. Benihana moved for summary judgment, which the District Court granted. For the following reasons, we will affirm.

## I.    BACKGROUND[1]

Duong worked as a chef at a Benihana restaurant in Cherry Hill, New Jersey. Beginning around January 2018, he made several complaints to his supervisors about the restaurant's lack of cleanliness and poor sanitation practices. In March 2018, Benihana hired a new server, Michael Stewart. In his first few months, Stewart sexually harassed and made inappropriate physical contact with other employees, including a server named Marcia Escobar, who was Duong's girlfriend. Duong made additional complaints to his supervisors about Stewart's conduct.

On May 2, 2018, Stewart again sexually harassed Escobar. Duong did not witness the incident, but he learned about it minutes later. He then confronted Stewart and told him to stop touching staff members. The confrontation escalated when Stewart began yelling profanities at Duong and asking him if he wanted to fight. Stewart then

---

[1] The following background information is told in the light most favorable to Duong. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011).

physically attacked Duong, who responded by putting up his hands, shoving Stewart back, and grabbing Stewart's wrists. After approximately one minute, other employees broke up the fight.

The sexual harassment and the subsequent fight were recorded on Benihana's surveillance cameras. The following day, Susan Crowley, the restaurant's general manager, and Loukas Kotsadam, Duong's immediate supervisor, viewed the footage. According to Crowley, the video showed that Duong and Stewart had "pushed and slapped each other" and that Duong had acted "extremely aggressive[ly]" during the altercation. (App. at 367-68.) Both Crowley and Kotsadam believed that Duong had been the initial aggressor. After viewing the footage and collecting statements from the individuals involved, Crowley fired both Duong and Stewart. Duong was terminated for workplace violence, while Stewart was terminated for both workplace violence and sexual harassment.

Regarding the surveillance footage, Crowley emailed her regional manager, Chun Chang, to ask how long the footage would be preserved. She informed him that the police had been called to the restaurant and that they advised her to keep the footage of the altercation. Chang then forwarded that email to Sandra Cintado, Benihana's senior director of human resources, and he recommended saving the footage, particularly because Stewart claimed that "he was terminated wrongfully" and that he would be "pressing charges against [Duong]." (App. at 632.) But Cintado disagreed with that recommendation and, without ever watching the footage, she determined that it should

3

not be preserved.  The footage was later deleted and overwritten, pursuant to Benihana's general policy of only keeping footage for ninety days.

Duong subsequently sued Benihana for wrongful termination.[2]  He claimed that he was fired not for workplace violence but for raising his various complaints with management, and that his firing was in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination ("LAD"), and the common-law theory of wrongful discharge set out in *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505 (N.J. 1980).

Following discovery, Duong moved for an adverse inference as a sanction for spoliation with respect to the deleted video footage, and Benihana moved for summary judgment on all counts.  The District Court ruled for Benihana on both motions.  The Court held that Duong had violated the company's workplace violence policy and that "no reasonable jury could conclude that the true motivation for [his] firing was anything but his physical altercation with Stewart while at work."  (App. at 14.)  The District Court also declined to impose any sanctions against Benihana for the loss of the video.  It concluded that Duong had not shown that Benihana had acted with bad faith or that he had suffered any prejudice, given that his own telling of the altercation, even accepted in full, was sufficient to eliminate any reasonable dispute over the cause for his termination.

Duong moved for reconsideration, contending that the District Court erred in finding that he had violated the workplace violence policy.  He argued that the Court had

---

[2] Duong, a New Jersey citizen, filed his suit in New Jersey state court, and Benihana, a citizen of Florida and Delaware, removed the case to the District Court.

ignored evidence that he had acted solely in self-defense and that his acts were permissible under Benihana's workplace violence policy. The Court rejected that argument and denied the motion for reconsideration, holding that it was irrelevant whether or not Duong was the initial aggressor. Duong timely appealed.

## II. DISCUSSION[3]

### A. Duong's Motion for an Adverse Inference

We review for abuse of discretion the District Court's decision on a motion for a sanction such as an adverse inference due to spoliation of evidence. *In re Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997). Spoliation occurs where (1) the evidence was in the party's control, (2) the evidence is relevant to the claims or defenses in the case, (3) the evidence was actually suppressed or withheld, and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Sanctionable spoliation requires a showing of bad faith. *Id.* at 79 ("[A] finding of bad faith is pivotal to a spoliation determination."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("Such [an adverse] presumption or inference arises … only when the spo[li]ation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." (citation omitted, fourth alteration in original)).

---

[3] The District Court had jurisdiction over this diversity case under 28 U.S.C. §§ 1332 and 1441. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

There is no dispute that the video footage of the altercation between Stewart and Duong was in Benihana's control, that it was relevant to Duong's claims, and that it was deleted. Furthermore, the need to preserve the video was rendered reasonably foreseeable by both the police's advising Benihana to keep the footage and Stewart's declaring that he would be filing assault charges against Duong and an unfair termination claim against Benihana. Indeed, Crowley and Chang both apparently did foresee the need to preserve the footage, and Chang communicated that need to Cintado.

Nonetheless, the District Court did not abuse its discretion in finding that there was insufficient evidence of bad faith to justify imposing sanctions on Benihana. After all, Crowley – the individual who terminated Duong after watching the footage and thus would have had the most knowledge about whether the footage would help or hurt Benihana in subsequent litigation – had suggested preserving the footage, even though her recommendation was disregarded as it was passed up the chain of command to individuals with no personal knowledge of the video's contents. It thus does not appear that there was any fraudulent intent to hide inculpatory evidence. Furthermore, we agree with the District Court that Duong did not suffer additional prejudice from the loss of the video. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (listing "the degree of prejudice suffered by the opposing party" as a necessary consideration before imposing sanctions). As noted by the District Court, even accepting Duong's own account of the altercation, Benihana was entitled to summary judgment. There was no abuse of discretion in denying Duong's motion for an adverse inference.

### B. Benihana's Motion for Summary Judgment[4]

Duong sued Benihana for retaliatory termination under the CEPA, the LAD, and *Pierce*. The analysis for each of those claims is very similar. Each claim requires a causal connection between an employee's protected activity and an employer's adverse employment action.[5] Benihana does not dispute that Duong's complaints about workplace conditions constituted protected activity or that the firing of Duong was an adverse employment action. As in many cases such as this, the key issue here is whether

---

[4] We review de novo the District Court's grant of summary judgment. *Hubbard v. Taylor*, 399 F.3d 150, 157 n.12 (3d Cir. 2005). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we view all conflicting evidence and draw all reasonable inferences in favor of the nonmoving party, and we do not make credibility determinations. *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

[5] To prevail on a CEPA retaliation claim, a plaintiff must prove that "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity … ; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). The elements of a *Pierce* claim track those of a CEPA claim. *See Feldman v. Hunterdon Radiological Assocs.*, 901 A.2d 322, 328 (N.J. 2006) ("CEPA represents a codification of the common law rule announced in *Pierce*[.]" (citation omitted)). To prevail on a LAD retaliation claim, a plaintiff must prove that "1) he was engaged in a protected activity known to the defendant; 2) he was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." *Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995).

a causal connection exists between the protected activity and the firing.  *Donofry v.*

*Autotote Sys., Inc.*, 795 A.2d 260, 269 (N.J. Super. Ct. App. Div. 2001).

Causation can be proved through direct evidence or circumstantial evidence.

*Romano v. Brown & Williamson Tobacco Corp.*, 665 A.2d 1139, 1143 (N.J. Super. Ct.

App. Div. 1995).  When the evidence is circumstantial, as it is here, New Jersey courts

apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).  *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999); *see*

*also Kolb v. Burns*, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999) (noting that

claims under CEPA, LAD, and Title VII of the federal Civil Rights Act of 1964 share a

"[c]onsistent … burden-shifting framework").

Under that framework, the plaintiff first bears the burden of making out a prima

facie case of retaliatory termination.  *Blackburn*, 179 F.3d at 92.  If he does, the employer

must then articulate a legitimate, nonretaliatory reason for terminating him.  *Id.*  The

employer's burden at this stage is "relatively light"; it need not prove that the articulated

reason actually motivated the termination, because the ultimate burden of proof still lies

with the plaintiff.  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  Finally, if the

employer articulates a legitimate reason, the plaintiff must show that the proffered reason

was a pretext or that retaliation was more likely than not a determinative factor in the

employer's decision.  *Donofry*, 795 A.2d at 270-71.  At summary judgment, a plaintiff

seeking to show that the proffered reason was a pretext must "demonstrate such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them 'unworthy of credence[.]'" *Fuentes*, 32 F.3d at 765 (citation and emphasis omitted).

We will assume that Duong has made out a prima facie case of retaliatory termination.[6] Benihana responds by asserting that it discharged Duong not for making complaints but instead for violating the restaurant's workplace violence policy. Duong contests the legitimacy of that proffered reason, arguing that he did not actually violate the policy.

Benihana's Employee Handbook states that "[d]isorderly conduct, including but not limited to fighting or other violence and/or threatening behavior[,]" may result in "disciplinary action up to and including immediate termination of employment." (App. at 677-78.) Similarly, the Employee Handbook "prohibits any employee from threatening violence or committing any act of violence in the workplace[.]" (App. at 667.) Duong's notice of discharge stated that the reason for his termination was that he "got into a verbal and physical altercation" and that his behavior was "a direct violation of [Benihana's] company policy on workplace violence." (App. at 730, 735.) Indeed, Duong acknowledges that, at the very least, he verbally confronted Stewart, shoved him, and grabbed his wrists. Based on that potentially "violent and/or threatening behavior," the

---

[6] With respect to causation – the only contested element of Duong's claims – the temporal proximity between Duong's complaints about uncleanliness and harassment in the workplace and his termination is likely enough to carry his burden of establishing a prima facie case. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (explaining that causation may be shown though "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"). According to Duong, his series of complaints began around January 2018 and continued at least through April 2018, just days before he was terminated.

9

workplace violence policy gave Benihana a legitimate, nonretaliatory reason to terminate Duong. (App. at 678.)

Duong nonetheless argues that his conduct during the altercation should not or could not have resulted in termination, based on what he describes as an unwritten company policy that acts of self-defense are not punishable. In support, he cites the deposition testimony of Cintado, who, as a reminder, was Benihana's senior director of human resources at the time. Cintado acknowledged that Benihana would not discipline an individual who was involved in a fight if the individual only put up his hands to block a punch, because in that case the individual "didn't do anything." (App. at 215.) Similarly, she noted that there would be no punishment if the individual "mistakenly" hit his aggressor, because in that case the act "wasn't intentional." (App. at 215.) But both of the situations addressed by Cintado do not match the facts of this case. Duong did not merely put up his arms in an attempt to parry Stewart's blows. Rather, he concedes that he intentionally shoved and grabbed Stewart. Furthermore, Cintado testified that, with the exception of the simple "block the punch" scenario, both participants in an altercation "have committed the same violation in terms of seriousness[,]" regardless of who started the fight. (App. at 214.) That testimony further supports the conclusion that Benihana's articulated reason for terminating Duong was legitimate.[7]

_____

[7] Duong argues that, regardless of Benihana's corporate policies, Benihana could not legally have fired Duong for "us[ing] physical defensive force in response to sexual harassment" because that is in itself protected activity. (Opening Br. at 34 (citing *Speed v. WES Health Syst.*, 93 F. Supp. 3d 351, 360-63 (E.D. Pa. 2015).) Even if that were true, we are not faced with that situation here. Duong was not protecting himself or anyone

As a result, the burden then falls on Duong to present "sufficient evidence for a reasonable jury to find that [Benihana's] proffered reason for the discharge was pretextual and that retaliation for the whistleblowing was the real reason for the discharge." *Blackburn*, 179 F.3d at 92-93. Duong's arguments on this front fall into three categories: inconsistent enforcement, animus, and spoilation.

First, he argues that Benihana's workplace violence policy is inconsistently enforced, which might indicate that it was selectively enforced in his case just to get rid of him. Inconsistent enforcement can indeed be evidence of pretext. *Id.* at 95. In this case, however, Duong has not presented sufficient evidence that he was a victim of selective enforcement. He first points to testimony from Benihana's regional manager, Chun Chang, that a "lightly verbal" confrontation may be a violation of the policy but may not result in termination. (App. at 145.) But the fight between Duong and Stewart was not, by any stretch, "lightly verbal." It started out verbal and got physical, and Chang's testimony does not suggest that there has been inconsistent enforcement of the policy against individuals involved in physical altercations. The only evidence of possibly inconsistent enforcement comes from the testimony of Escobar, who said that, during her eight years at Benihana, she had seen multiple employees get into fights without being terminated. But Escobar did not provide details about when the fights occurred, who was involved, or whether Benihana's management was informed of and

---

else from sexual harassment, as Duong confronted Stewart after Stewart had already sexually harassed Escobar that evening.

investigated the fights. There is simply not enough evidence to lead a reasonable jury to find that Benihana acted inconsistently and fired Duong pretextually.[8]

Second, Duong suggests Benihana harbored animus against him. One way to establish a causal connection between an employee's whistleblowing activity and his termination is to show "a pattern of antagonism coupled with timing[.]" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (citation omitted). But Duong does not point to any evidence that shows "a pattern of antagonism." He takes issue with Crowley retrospectively summarizing the lost video footage as showing that Duong was "extremely aggressive." (App. at 368.) But one description of an isolated incident does not reflect a pattern of mischaracterizing Duong's conduct or otherwise antagonizing him.[9] Duong also asserts animus on the part of Kotsadam, who suggested to Crowley that she should terminate Duong but not necessarily Stewart, based on his belief that it was Duong, not Stewart, who started the fight. That single comment does not represent a pattern of antagonism that would support a finding that Benihana sought a

---

[8] Likewise, Escobar's testimony that managers failed to investigate her reports about Stewart's sexual harassment, in violation of a corporate sexual harassment policy, is not sufficiently indicative of a retaliatory motive, particularly where it is not evident who the managers were or whether they in fact conducted the required investigation. Furthermore, Benihana's supposedly inconsistent enforcement of one policy – the sexual harassment policy – is not sufficient evidence, even if true, that it used a different policy – the workplace violence policy – as a pretext for terminating Duong.

[9] To the extent that Duong argues that Crowley was lying about what she saw in the video (and thus her stated reason for terminating him should also not be believed), her characterization of Duong's behavior is not an inconsistent way to describe someone who, by his own admission, verbally confronted, shoved, grabbed, and restrained an angry individual – even if he was acting in self-defense.

12

pretext for terminating Duong. And there is insufficient evidence to indicate that Crowley, the actual decisionmaker who terminated Duong, was influenced by Kotsadam's purported animus.

Third and finally, Duong argues that the spoliation of the video footage is evidence that retaliation was a determinative factor in his termination. He contends that "this intentional destruction was undertaken in an attempt to hide that Benihana's stated reason for terminating Duong was pretextual." (Opening Br. at 41.) As discussed above, the main difficulty with his argument is that Crowley, the person who would have had the knowledge and the incentive to destroy the video if it would expose any pretext, did not seek its destruction. Rather, she followed what she understood to be the procedure for saving the video. It was Cintado who chose not to preserve the video – but she testified that she did so without watching it herself, and thus she would not have had reason to believe that she needed to delete it to hide inculpatory evidence. Thus, even if the decision to not preserve the video was ill-advised (and it certainly was), it is not, on this record, meaningful proof of a hidden pretext for Duong's termination.

For the above reasons, we agree with the District Court that there is no genuine dispute that retaliation was not a determinative factor in Duong's termination.

## III. CONCLUSION

The District Court's orders denying Duong's motion for an adverse inference and granting summary judgment for Benihana will be affirmed.

13